*Reversed, and demurrer to the plea sustained, and leave to defendant to answer over.*

---

## Pleas. Applewhite v. C. D. Nelms et al.

1. Landlord's Lien. *Code 1892, § 2495. Distraining crop of subtenant. Marshaling. Subrogation.*

   Since the lien of a landlord, under § 2495, code 1892, extends to all agricultural products of the leased premises, by whomsoever produced, a subtenant, by reason of the liability of his crop, and to the extent thereof, occupies the relation of a surety for the rent due by the tenant, and may, therefore, in equity compel the landlord to first resort to the estate of the tenant, the principal debtor, and preserve whatever securities he may have from such tenant, in order that the subtenant, whose crop is taken for rent, may be subrogated thereto.

2. Same. *Purchaser from tenant. Right of subtenant.*

   Where one, without the landlord's consent, has purchased from the tenant crops subject to the lien for rent, a subtenant, whose crops are seized by the landlord under his lien for such rent, may in equity compel him first to enforce the liability of such purchaser for the value of the crop so purchased.

3. Joint Renters. *Equities against landlord. Rights of subtenant.*

   Where two jointly rent land and partition it, a court of equity, having jurisdiction of all the parties and the subject-matter, will maintain their equities by requiring the landlord, as far as practicable, to collect his rent from them ratably; but there is no obligation on a subtenant of one of them, whose crops are distrained for the rent of such tenants, to protect one of them as against the default of the other.

4. Same. *Rights of tenant and subtenant. Purchaser. Marshaling securities.*

   In a suit in equity by such subtenant whose crops have been distrained by the landlord, and who seeks to marshal securities and adjust equities,

the court, the proper parties being before it, should decree, first, that whatever is due by the subtenant on his rent be paid to the landlord; then, that the property of the tenants be exhausted, preserving equality between them as far as possible; next, that the purchaser from one of the tenants of cotton subject to the landlord's lien pay its value; then, if there be a balance due, that the crops of the subtenant be subjected.

FROM the chancery court of the second district of Carroll county.

HON. T. B. GRAHAM, Chancellor.

The case is stated in the opinion.

*Southworth & Stevens*, for appellant.

It is admitted that Nelms has a lien upon the crops of the subtenant, but, under the familiar doctrine of marshaling securities, equity will compel him to first exhaust the estate of the tenants. It is not denied that Dunson, one of the joint renters, made more than enough cotton to pay the rent. He cannot, through collusion with Nelms or caprice, refuse to pay the rent, and remit the landlord to the crops of the subtenant, who is ready and willing to pay whatever rent he owes to the tenant. Dunson and Rodgers became jointly and severally liable for the whole rent, and equity will not subject the crops of the subtenant until their estate has been exhausted. Tiedeman on Eq. Jur., §§ 458, 532; 1 Story on Eq., §§ 633-645; 2 Beach on Mod. Eq. Jur., ch. 32.

*Somerville & McClurg*, for appellees.

The lien of the landlord, Nelms, existed by statute, and could not be lost or diminished by any arrangement between the lessees and their tenants to which he was not a party. *Hollingsworth* v. *Hill*, 69 Miss., 73; *Eason* v. *Johnson*, *Ib.*, 371.

There being no charge or proof of fraud or collusion between the parties, there is no right of equitable interference. While the notes of the tenants are joint and several, the lien on the crops is also joint and several. Rodgers could not

sublet his half of the land, and compel Nelms to accept what his tenant agreed to pay him; if so, Dunson could have done the same thing, and Nelms would have been remitted altogether to the crops of the subtenant.

COOPER, J., delivered the opinion of the court.

In the year 1890 the appellee, Nelms, was the owner of a certain tract of land which he contracted to convey to Charles Dunson and Cal Rodgers, upon the payment by them of the purchase-price agreed on. He made to them a bond for title to said land upon the payment of the purchase-price, and delivered to them the present possession of the land. As a part of the contract between the parties, and written in the body of the bond, it was agreed that if the purchase-price should not be paid as stipulated, then Dunson and Rodgers were to pay to Nelms, as rent, five bales of cotton per annum, and they executed a joint obligation to him for the payment thereof. After Dunson and Rodgers had received possession of the land, they made a parol partition thereof for occupancy, each taking the part he was to have as owner when the land should be paid for.

The appellant rented from Rodgers the portion of the land set apart to him in the partition between Rodgers and Dunson, agreeing to pay him, as rent thereof, one-fourth of the cotton and corn grown during his term.

Dunson and Rodgers failed to make payment of the purchase-price of the land, so that, under the terms of their contract with Nelms, they became liable to pay to him five bales of cotton as rent for the year 1891. Dunson paid one-half of the cotton to Nelms, and the appellant paid to him, on account of said rent claim, the proceeds of one-fourth of the cotton he had ready for market, at which time he was interrupted by the levy of a distress for rent sued out by Nelms, and which was levied upon the remaining crop of appellant, and upon a portion of the crop of Dunson. Before the levy of the writ, Dunson had sold to the appellees, Hawkins &

McConnico, a part of his crop grown on the demised premises. In this condition of affairs the appellant exhibited his bill in chancery stating the foregoing facts, and alleging the insolvency of Dunson and Rodgers, and averring that there was collusion between Nelms, Dunson, and Hawkins & McConnico for the purpose of relieving Dunson's crop of liability for more than one-half of the rent due to Nelms, and in order that the remainder of his crop might be applied by him to the payment of a debt he owed Hawkins & McConnico. On the bill an injunction was issued staying proceedings on the distress until final hearing. The case was tried on an agreed statement of facts, in which all charges of fraud and collusion were excluded, and which are, in substance, as above set forth. On hearing, the chancellor was of opinion that complainant was not entitled to relief, and dissolved the injunction and dismissed the bill, from which decree complainant appeals.

By law the landlord has "a lien on the agricultural products of the leased premises, however and by whomsoever produced, to secure the payment of the rent . . . and this lien shall be paramount to all other liens, claims or demands upon such products." Code 1892, § 2495.

Nelms, the landlord, was entitled to secure the full payment of his rent, and must be paid in any event if the agricultural products grown on the premises are sufficient therefor. The crops grown by appellant were subject to the attachment of the landlord, but this liability existed not because he was debtor to the landlord, but because the crops were made liable by positive law. Dunson and Rodgers, who had by contract bound themselves for the payment of the rent, were, and continued to be, the debtors, and complainant, by reason of the liability of his crops, occupied the relation of surety for them. Obviously, these relationships existed between the parties in the view of a court of equity, and, this being the case, the consideration of a few controlling principles will lead to a correct solution of the controversy.

Nelms had as security for his rent not only a lien upon the property of the appellant, but also upon the crops of Dunson, one of the principal debtors. It is well settled that a surety may, by resort to a court of equity, compel the creditor first to exhaust the estate of the principal (*Bowen* v. *Hoskins*, 45 Miss., 183), and that a creditor having security from the principal debtor must preserve it for the benefit of the surety, who, upon paying the debt of his principal, has a right of subrogation to the securities held by the creditor. George's Digest, Title, Principal and Surety, § 21 *et seq.*

The lien of Nelms, the landlord, extended to the whole crop grown on the premises by Dunson, and, by reason of the equity of the appellant, it was the duty of the landlord to exhaust that security or to preserve it unimpaired by any positive act on his part for appellant's benefit.

As between Nelms on the one hand and Dunson and Rodgers on the other, it would be but just that Nelms should maintain the equities of Dunson and Rodgers, as between themselves, by securing, if practicable, an equal payment of the rent from each; but there is no obligation, legal, equitable or moral, on the appellant to save Dunson harmless from the default of his co-obligor, Rodgers. If Nelms had waived his lien upon the cotton of Dunson, and consented that he might sell it to Hawkins & McConnico, he could not go against them for its value, but to the extent of that value the appellant, the surety, would have been released.

It does not appear that Nelms waived his lien upon Dunson's cotton, and Hawkins & McConnico are therefore liable to him for the value of the cotton they bought from Dunson. *Eason* v. *Johnson*, 69 Miss., 371; *Warren* v. *Jones*, 70 Miss., 202. And this liability of theirs is a security which will be preserved to appellant, the surety of Dunson.

All the parties being now before the court, complete relief may be granted in the present suit. The court should have decreed that out of the proceeds of appellant's property that has been seized, the balance due by him to Rodgers should

be paid to Nelms; then, that the property of Dunson, seized under the distress, should be exhausted in payment of the rent; after this, Hawkins & McConnico should have been required to pay the value of the cotton bought by them from Dunson, and, if a balance then remained due to Nelms, the crops of appellant should have been sold for its payment.

*The decree will be reversed, and cause remanded, to be proceeded with accordingly.*