## Scott & Garrett v. Green River Lumber Co.

[77 South. 309, Division B.]

1. DAMAGES. *Duty to reduce damages. Landlord's lien.*

A landlord cannot pay to his tenant who is indebted to him sums of money in excess of the amount due by the tenant, and thereafter recover the amount due by the tenant from a purchaser of products of the tenant in good faith.

2. SAME.

In such case the landlord could not be required to apply any money which would be exempt to the tenant to the liquidation of his debts, but he must use reasonable means to reduce his damages.

APPEAL from the circuit court of Quitman county.
HON. W. A. ALCORN, JR., Judge.

Suit by the Green River Lumber Company against Scott & Garrett. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*P. H. Lowry,* for appellant.

Under the evidence in this case, the defendants were at most, only sureties for the payment of this rent, Norris being the principal debtor. Norris owed them an indebtedness secured on his crop, more than the crop paid, and was still largely indebted to them, and there is no pretense of proof that they ever agreed with Norris to pay this indebtedness, in consideration of the receipt of the crop. They were only secondarily liable, or in other words they were sureties.

Mr. Black in his Law Dictionary, says: "A surety is defined as a person who, being liable to pay a debt, or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so."

To the same effect: 27 Am. & Eng. Ency. Law, page 431; *Smith* v. *Shelden,* 24 Am. Rep. 333. While there is some conflict of authority, the reasonable, just and general accepted rule is that where a principal creditor has the means of satisfaction actually within his grasp, he must retain it for the benefit of the surety, *Lichtenhallers* v. *Thompson* (Penn.), 15 Am. Dec. 583; *Baker* v. *Briggs,* 19 Am. Dec. (Mass.) 316; *White* v. *Life, etc.,* (Ala.), 35 Am. Rep. 45; 27 Am. Eng. Ency. Law (2 Ed.), 516 and 520. In the case of *Moreland* v. *Peoples' Bank,* 74 So. 828, this court recently held that the rule above stated will not be applied in this state if a bank is dealing with the funds of its depositors. I do not understand that the court means to repudiate this general doctrine, which is correct and wholesome; but this court as I gather only declined to apply it to banks, for the reason stated in the *Wilkes-Barre* v. *Legrande,* 103 Pa. 309, quoted, as I take it, approvingly by this court. It is not necessary, however, to apply this rule in its strictness in this case. Here the plaintiff was actually indebted to Norris, at the very time the suit was

brought, in a sum much larger than the debt for which the defendants were surety and had notice that Norris was a non-resident and was insolvent, and that the defendants were delaying a settlement for the very purpose of getting the money out of Norris. Further than that, they knew of the plea and notice of the defendants in this case, and by the interrogatories filed for them to answer, that the defendants were defending this suit on that very ground. Under these circumstances, the appellee deliberately, and as we think the evidence shows, fraudulently handed this cash over to the principal debtor, ordinarily releasing the surety, it seems to me that there can be no question about the payment, under the circumstances in this case releasing the surety.

It may be true also, that ordinarily the payment of a salary or wages to an employee would not come within the rule. In the present case, while the amount was paid for services, it is not within the reason of the exception. Here it was not a payment of a running salary, but a payment of quite a sum of money that had accumulated from a salary much more than sufficient for ordinary living expenses.

Independent of the notice under the general issue in this case, the defense that the plaintiff at the time the suit was brought had sufficient funds of the principal in its hands to pay the debt, might have been made under the general issue. 32 Cyc., 130.

The defense by a surety of release by the dealings of the creditor with the principal, is a legal defense, while it may arise out of the equitable doctrine of marshalling securities and at least a kindred doctrine, it may nevertheless be made in a suit at law. Besides, where the surety is sued alone, he may set up any defense, legal or equitable. 32 Cyc., 149; 27 Am. & Eng. Ency. Law (2 Ed.), 489; *Smith* v. *Clopton,* 48 Miss. 66. To sum up my position in this case, it is as follows: First, the appellants (defendants) are surety for a debt of Norris, the tenant; second, the appellee (plaintiff)

after the debt of Norris, the principal, became due, and before this suit was brought, and at the time this suit was brought was indebted to Norris' and had funds of Norris; in its hands, much in excess of the debt for which appellants are surety; third, the appellee knew that the crop of Norris had been applied on the indebtedness of Norris to the appellants, incurred in the making of this crop, and that it was not sufficient to pay the indebtness; fourth, the appellee knew further that the appellants were delaying the payment of Norris' debt, in order that Norris might pay it himself; fifth, this notice had been brought to appellee, not only by the defense set up in this case, but by searching interrogatories, propounded to the appellee by the appellants in the course of the litigation; sixth, the appellee with this knowledge, and with no excuse except the purpose to make the surety pay the principal's debt, paid to the principal, a much larger amount than the indebtedness for which the appellants were surety; seventh, by this course, of dealing and these transactions between the creditor and the principal debtor the surety is released. So far as the surety is concerned, the debt is paid and the creditor cannot demand of them the payment of it or the indebtedness for the payment of which it had in its actual possession much more than enough of the principal debtor's money to satisfy and which it deliberately and purposely paid over to him. This is a gross fraud and an injustice to the surety, which the courts of justice will not permit. I therefore must respectfully submit that this case should have been submitted to a jury and that it was error for a court to give a peremptory instruction of the plaintiff and it should be reversed and remanded for a trial by a jury under proper instructions.

*J. E. Holmes,* for appellee.

We respectfully submit that a clearer case cannot be stated for the application of the lien of the landlord for his rent. The statute is not open to construction.

"Every lessor of land shall have a lien on the agricultural products of the leased premises, however and by whomsoever produced, to secure the payment of the rent and this lien shall be paramount to all other liens, claims or demands upon such products." (Sec. 2832, Code 1906.)

It is equally clear that the lien will prevail against even a *bona-fide* purchaser for value, and that the landlord is not confined to the statutory remedy the lien is broader. *Newman* v. *Bank,* 66 Miss. 323-337; *Henry* v. *Davis,* 60 Miss. 212; *Fitzgerald* v. *Fowlkes,* 60 Miss. 270; *Cohn* v. *Smith,* 64 Miss. 816.

But learned counsel for appellants seems to take the position that as between landlord and tenant there exists the relation of creditor and debtor and that the defendant merely became sureties for Norris the debtor of the plaintiffs, and upon this theory learned counsel builds the foundation for his assignment of error. It is true that the subtenant stands in the relation of surety for the tenant, but I do not find any case holding that a creditor of the tenant or a creditor of a subtenant is surety for the tenant.

In this case the defendants, Scott & Garrett, purchased the cotton and applied the proceeds, knowing that the landlord's lien existed against the cotton. In other words the cotton was converted by the defendants with the knowledge that there existed a lien against the cotton for the payment of the rent. In fact, there was an implied understanding that the proceeds of the cotton should pay the rent, and it is impossible for the defendants to escape the effect of their letter shown on page 107 of the transcript in which said letter the defendants admit the claim of the plaintiffs. The defendants say in said letter: "Mr. Norris told us the only claim there is or will be on his crop will be your claim for land rent only. Will you please verify his statement to us?" The plaintiff verified this statement and the defendants took over the cotton upon that understanding. Not only so,

but learned counsel's position is not tenable either on the law, nor upon the particular facts in this case.

In the second place, if the defendants were surety for the payment of the rent, and nothing more, then they (plaintiffs) could not be compelled to apply money which came into their hands to the rent account, but would have the right to apply such funds to the payment of other accounts if they desired to do so. This under the authority of *Moreland* v. *People's Bank,* 74 So. 828.

In the third place, the plaintiffs have never been indebted to Norris. If they had applied Norris' salary to the payment of Norris' debt, and had not paid it to him in cash, Norris would still be indebted to the plaintiffs. In other words, the whole contention of counsel is to the effect that the plaintiff should have charged the rent on open account and permitted Norris to be in debt to them to an additional amount equal to the rent, and then applied on the whole account the salary promised to Norris. But for the plaintiffs to have taken this course would have resulted in the loss of the service of Norris, and would not have brought about the payment of the rent.

We most respectfully submit that the appellants cannot prevail in this case upon any theory advanced by learned counsel.

Wherefore, in conclusion, we answer learned adversary counsel as follows: First, the appellants (defendants) are not surety for the debt of Norris, the tenant; second, the plaintiff, appellee, was not indebted to Norris and has had no funds belonging to Norris in its hands with which to pay the rent debt of Norris; third, the appellee was not concerned with whether or not the debt of Norris to the appellants had or had not been paid; fourth, the appellee was not compelled to retain Norris in its employ indefinitely in order that Norris might work out on a salary basis rent due in the fall of 1914; fifth, therefore, it was unnecessary to have brought home to the appellee any claim of the appellants to such

effect, because appellee had a right to rely upon their statutory lien for the payment of the rent; sixth, the appellee has not sought to make any surety pay any principal debt. The appellee simply desires to have the defendants, who converted the cotton upon which there was the landlord's lien to pay to the landlord the amount of rent due and not paid. *Peets & Norman* v. *Baker,* 95 Miss. 577; seventh, even if appellants were sureties, the surety cannot be discharged until the debt is paid, and the rent still remains unpaid in this case. We do not know of any rule which requires a landlord to wrongfully appropriate the wages of an employee in order to collect his rent; such a proceeding would be a gross fraud and injustice to the employee, which this court of justice will not require.

Not only so but, it is simple justice that the landlord should receive his rent, even though the landlord does have other dealings with his tenant and the tenant is indebted to him on other accounts. The landlord is not required by law to hold back the wages which he owes the tenant or other employee until the wages amount to enough to pay the rent, and then apply such wages to the payment of the rent contrary to his contract with his employee, thereby defrauding his employee out of the fruits of his labor. Yet such is the contention of the appellants here, who insist that the wages earned in 1915 and 1916 by Norris should have been applied to the payment of the rent for land leased in 1914 when Norris, the tenant, had turned all of the cotton produced by him in 1914 to the appellants, and the appellants knew that the rent had not been paid when they received the cotton, and acknowledged under their own signature that the landlord had his lien for rent. The mere statement of the issue raised on the assignment of error is sufficient to show the fallacy of the contention.

Ethridge, J., delivered the opinion of the court.

The Green River Lumber Company filed suit in the circuit court of Quitman county against Scott & Garrett, a mercantile firm doing business in said county, for three hundred forty-six dollars and thirty-two cents, alleged to be the amount of rent due the Green River Lumber Company by one J. S. Norris, who rented certain lands from the lumber company, Scott & Garrett having purchased products grown upon the leased premises during the year 1914, amounting to more than said amount claimed as rent. The defendants, Scott & Garrett, contended that, in November, 1914, Norris went to work for the Green River Lumber Company as a laborer or superintendent of the sawmilling business, at and for the sum of one hundred dollars per month, and that between November, 1914, and the date of judgment twenty-one months had elapsed, and, Norris being a single man, that it was the duty of the Green River Lumber Company to collect from Norris as much as possible so as to reduce its claim, or to collect it in full, out of the wages earned by Norris. It appears in the record that, in addition to the rent of three hundred forty-six dollars and thirty-two cents, Norris was indebted to the lumber company on a different account for about five hundred eighty-four dollars, making a total indebtedness due by Norris to the lumber company at the time he was hired of approximately nine hundred dollars.

At the conclusion of the evidence the court granted a peremptory instruction to find for the plaintiff, Green River Lumber Company, and refused two instructions requested by the defendants, Scott & Garrett. The refused instructions are as follows:

"The court instructs the jury that, if they believe from the evidence in this case that the plaintiff was, at any time after the rent here sued for became due to them from the tenant, Norris, indebted to the said Norris in any sum, and that they paid him any amount that they were

so due him instead of applying it to the rent due them
by the said Norris, and if the jury further believe from
the evidence that the purchase of the cotton raised on the
leased premises by the defendants was for a good and
valuable consideration, and that they did not, in consider-
ation of such purchase, assume or promise to pay the rent
due by the said Norris to the plaintiff, the plaintiff there-
by released the defendants from their liability for said
rent to the extent of such payment so made by them to
the said Norris, and the jury should deduct from the
amount of the rent sued for such sum as the evidence
shows was so paid by the plaintiff to the said Norris and
return their verdict only for such balance, if any, as is
now due to the plaintiff on said rent after the deduction
of such payments so made by them to the said Norris.''

"The court instructs the jury that, if they believe
from the evidence that the plaintiff was at any time in-
debted to the tenant, Norris, in a sum equal to or exceed-
ing the amount due to them by the said Norris for rent,
and that the plaintiff paid the said sum to the said Nor-
ris instead of retaining it in satisfaction of the rent due
them by the said Norris, the defendants were thereby
released from their liability on account of the purchase
of the cotton raised on the leased premises, if said pur-
chase was in good faith and for a valuable consideration,
and if the defendants, in consideration of the purchase,
did not assume and agree to pay the said rents, and if
the jury so believe, they should find for the defendants.''

The question arises for decision as to whether a land-
lord having a claim for rent against the tenant, and hav-
ing a right under the statute to resort to the products
grown upon the leased premises for satisfaction thereof,
and also having an action against any person buying said
products, with or without notice of the landlord's lien,
and who has become indebted to the tenant for wages
due, or in some other manner, is bound to withhold
the amount due to the tenant and apply it on the indebted-
ness due by the tenant before resorting to a third person,

who has bought products grown upon the land and paid
value therefor, for the amount due.

In the case of *Applewhite* v. *Nelms,* 71 Miss. 482, 14 So.
443, involving the construction of section 2495 of the
Code of 1892, under which statute the landlord has a lien
on all products grown on the leased premises, the ques-
tion for decision was whether or not he could resort to
a subtenant's crop for satisfaction of his lien without first
having exhausted the products and crops of the main ten-
ant and his right to proceed against the buyers of such
products from the tenant before resorting to the crops
of a subtenant. The court held, in effect, that the relation
existing between the landlord and subtenant was that the
subtenant was a surety for the rent due by the principal
tenant, and that the landlord should be compelled to
exhaust his remedy against the tenant. It is a familiar
principle of the law that, where two parties are in a
situation where one or the other must suffer for the de-
fault or act of some third person, and one party has it
within his power to prevent, by reasonable means, either
party from suffering, and fails to do so, he will be held
responsible for the loss which he might have obviated.
The right of the landlord to resort to the purchaser of
products of the tenant for the amount of his rent, to the
extent of the value of the products, arises as an action
for the conversion of the property. The court having
reached the conclusion in the original case which held
such person liable, that it was made a crime by statute
to remove the products from the place or premises where
they were grown without the consent of the landlord,
and that liability arose from such statute; in other words,
it did not arise in contract, but from the tort of the pur-
chaser. In all cases of damage it is the duty of the party
who is damaged to reduce his damages where it is reason-
ably within his power to do so. The rule is stated in 13
Cyc. p. 71, par. "k," as follows:

"Where an injured party finds that a wrong has been
perpetrated on him, he should use all reasonable means

to arrest the loss. He cannot stand idly by and permit the loss to increase and then hold the wrongdoer liable for the loss which he might have prevented.''

We have carefully examined the authorities cited in the briefs, and have made an independent investigation, of all available authorities at our command, but have failed to find a case precisely in point. We think, however, that the general principles of law warrant us in holding that the landlord cannot pay to his tenant, who is indebted to him, sums of money in excess of the amount due by the tenant, and thereafter recover the amount due by the tenant from a purchaser of products of the tenant in good faith. Of course, it was not incumbent upon the landlord to employ Norris, and he could not be required to apply any money which would be exempt to Norris to the liquidation of his debts, but he must use reasonable means to reduce his damage, and we think the peremptory instruction should not have been given to the plaintiff, and that the defendant should have had the instructions requested, but refused, and that the cause should have been submitted to the jury on the proper instructions.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*